**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                CRIMINAL ACTION NO. 1:09-cr-00059

MARCUS EDWARDS,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

On the 16th day of February, 2010, came the Defendant, Marcus Tramell Edwards, in person and by his counsel, Lex Coleman, and also came Miller A. Bushong, Assistant United States Attorney, for sentencing with respect to the Defendant's guilty plea to one count of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). The Defendant, through counsel, objected to the Presentence Investigation Report challenging, *inter alia*, (1) the weight of drugs used to determine his base offense level and (2) the calculation of the advisory sentencing guideline range given the 100:1 crack to powder cocaine disparity.[1] *See* Objection to Presentence Report (Document No. 28); Defendant's Sentencing Memorandum (Document No. 31); Supplement to Defendant's Sentencing Memorandum (Document No. 37). The Defendant also requested the imposition of a variant sentence.

---

[1] Mr. Edwards, through counsel, asserted during the sentencing hearing that with the exception of his objection to the crack cocaine / powder cocaine sentencing disparity, he had no other outstanding objections to the December 1, 2009 Presentence Investigation Report.

Counsel for the Government asserted that the drug weight used to determine Defendant Edwards' base offense level properly included all substances which were distributed by Mr. Edwards. Further, the Government recognized the Court's broad discretion to depart from the advisory sentencing guideline, but sought a sentence within the advisory sentencing guideline range. *See* Sentencing Memorandum of the United States (Document No. 29) at 2.

Upon consideration of the Defendant's objections to the December 1, 2009 Presentence Investigation Report, the parties' respective sentencing memoranda, arguments made at the sentencing hearing, the factors enumerated in 18 U.S.C. § 3553(a), and the entire record herein, the undersigned sustained Defendant Edwards' objection with respect to the calculation of his base offense level, but rejected the 100:1 crack cocaine to powder cocaine ratio in the United States Sentencing Guideline, § 2D1.1, note 10, categorically, on policy grounds. For reasons stated on the record and more fully explained herein, the undersigned applied a 20:1 crack to powder cocaine ratio.

**I. BACKGROUND**

On five separate occasions, during June and July of 2008, Mr. Edwards allegedly sold a controlled substance to a cooperating source of the Southern Regional Drug and Violent Crime Task Force ("Task Force") and the Drug Enforcement Administration. The Government further alleged that in January, 2009, Mr. Edwards sold cocaine to a different cooperating source working with the Task Force. On April 3, 2009, Mr. Edwards was charged by indictment with five counts of knowingly and intentionally distributing a quantity of cocaine base, also known as "crack," a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Counts One through Five) and one count of knowingly and intentionally distributing a quantity of cocaine, also known as

"coke," a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count Six).[2]  *See* Indictment (Document No. 1).  On June 8, 2009, Mr. Edwards pled guilty to Count Three of the Indictment for the distribution of a quantity of cocaine base, in violation of 21 U.S.C. § 841(a)(1)–admitting that on June 19, 2008, he sold 0.58 gram of cocaine base to the cooperating source and received $220.  *See* Plea Agreement (Document No. 25) ¶ 2; *see* December 1, 2009 Presentence Investigation Report ¶¶ 19-20.  The Government agreed to dismiss counts one, two, four, five and six upon final disposition of Mr. Edwards' case.

A presentence investigation report ("PSR") was prepared by the assigned United States Probation Officer in preparation for sentencing, using the November 1, 2009 sentencing guideline manual.  *See* December 1, 2009 Presentence Investigation Report.  As a result of his offense and relevant conduct, the assigned probation officer determined that Mr. Edwards was  responsible for 4.306 grams of cocaine base and 1.38 of the purported "cocaine."[3]  Combining the  weight of the cocaine base and the 1.38 of the purported "cocaine," the probation office determined that Mr. Edwards was responsible for the combined marijuana equivalent of 86.48 kilograms, which resulted in a base offense level of 22.[4]  Taking into account Mr. Edwards' acceptance of responsibility–and

---

[2]  Although the substance which was the subject of Count Six of the Indictment field tested positive for cocaine, the West Virginia State Police Laboratory revealed the substance was not cocaine and contained no identifiable controlled substance.  *See* December 1, 2009 Presentence Investigation Report ¶ 26.

[3]  *See supra* n.2.

[4]  United States Sentencing Guideline §2D1.1, comment (n.6) states that where there are multiple transactions or multiple drug types, the quantities of drugs are to be added. United States Sentencing Commission, Guidelines Manual §§ 2D1.1 (Nov. 2009) (USSG).  Application Note 10(B) provides that when there is more than one controlled substance, the weight of the substances are converted to grams of marijuana. *Id*.  Using the Drug Quantity Table, the probation office determined that the combined marijuana equivalent involved at least 80 kilograms but less than 100 kilograms of marijuana resulting in a base offense level of 24.  Pursuant to U.S.S.G. §2D1.1, Note 10(D)(i), if the offense involves cocaine base and one or more other controlled substances, this base offense level is reduced by two-levels–in this instance–to 22.

the Government's motion for an additional one-level reduction–pursuant to U.S.S.G. §3E1.1, Mr. Edwards' Total Offense Level was determined to be 19.

Given a Total Offense Level of 19 and a Criminal History Category of III,  Mr. Edwards' advisory sentencing guideline range was as follows:  (1) a term of imprisonment of 37-46 months; (2) a period of supervised release of at least 3 years; (3) a fine of $6,000 - $1,000,000; (4) restitution; and (5) a special assessment of $100.  This calculation was based on the 100:1 crack cocaine to cocaine powder ratio contained in the Federal Sentencing Guidelines.

Mr. Edwards, through counsel, asserts that the 1.38 grams of a non-controlled substance, which was the subject of Count Six of the Indictment charging Mr. Edwards with the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), should not be calculated as a part of his base offense level, because what Mr. Edwards sold was "cut" and not cocaine.   The Defendant also "objects to the use of the crack-based offense levels from the drug quantity table in U.S.S.G. §2D1.1(c) to determine his advisory guideline range[]" and argued that "the only appropriate ratio to utilize in crack cocaine cases is 1:1."  *See* Defendant's Sentencing Memorandum at 1, 20-21. Additionally, the Defendant requested the imposition of a variance sentence should the court decide not to implement a 1:1 ratio.  *See id.* at 21-25; *see also* Supplement to Defendant's Sentencing Memorandum at 7 ("To the extent the Court declines to grant the specific guideline relief requested . . . the Court should nevertheless impose a variance sentence which utilizes the 1:1 drug quantity ratio, or . . . [a]lternatively, a split sentence based upon a 20:1 drug quantity ratio . . . would also still be consistent with the statutory parsimony provision.").

## II. DISCUSSION

### A. Exclusion of non-controlled substance

4

Count Six of the Indictment charged Mr. Edwards with the distribution of a quantity of cocaine.  Mr. Edwards did not dispute that he sold what he refers to as "cut" to the confidential source for $50 or that the West Virginia State Police Laboratory determined the substance to weigh 1.38 grams.  However, there is no dispute that the substance distributed was not cocaine; indeed, it contained no identifiable controlled substance.  Further, the record in this case did not reflect that the Government sought to file a superceding indictment or information after it was put on notice that the laboratory result determined that the substance was not cocaine as it charged.  Instead, in its sentencing memorandum, the government refers to this non-controlled substance as a "counterfeit substance."  *See* Sentencing Memorandum of the United States at 1.

Additionally, the Government agreed with the Probation Officer's determination to include the 1.38 grams of "cut" in the Defendant's base offense level, and relied on the 1991 Fourth Circuit opinion in *United States v. Fletcher* as "further support for including the 1.38 grams of counterfeit substance as relevant conduct."  *Id.* at 1-2 (citing *United States v. Fletcher* 945 F.2d 725 (4th Cir. 1991)).  In *Fletcher*, the Fourth Circuit affirmed the conviction of two defendants for the attempted distribution of PCP even though what was actually distributed was not PCP or any other drug.  However, the undersigned found that *Fletcher* was distinguishable from the case *sub judice.*  First, the defendants in *Fletcher* were charged with an attempt crime and not the substantive crime of distribution.  The charged offense of an attempt crime afforded the court with the opportunity to assess the defendants' intent with respect to whether they thought they were distributing PCP or something other than PCP.  *Id.* at 727.  Second, in *Fletcher*, the court discussed several acts in which the defendants engaged, which the court concluded "[did] not make sense in another context."  *Id.* Specifically, the Fourth Circuit considered that on a previous occasion these defendants sold PCP

5

to the undercover agent. Further, one of the defendants cautioned the agent to drive carefully with the PCP in her car; eluded surveillance officers after the delivery; and admitted that he thought he had given PCP to the agent. *Id*. The court also had before it testimonial evidence from an expert witness that "it was not unusual for drug dealers to be supplied with a bad batch of PCP that would smell and look like PCP." *Id*. Further, *Fletcher*, specifically, noted that "everyone connected with th[e] sale believed the PCP to be genuine." *Id*. at 728.

There was no evidence before this Court that Mr. Edwards believed what he sold was cocaine or that he intended to sell anything other than what he refers to as "cut." Further, there was no evidence before the Court that Mr. Edwards was reasonably capable of providing the cocaine as charged. The undersigned considered that in five of the indicted counts, Mr. Edwards was charged with the distribution of cocaine base, not cocaine. Additionally, contrary to the Government's characterization of the distributed substance as a "counterfeit substance," Mr. Edwards was not charged with the distribution of a "counterfeit substance," but with the distribution of cocaine. Finally, there was no authority before the Court that permitted the inclusion of the weight of a non-controlled substance in a defendant's base offense level where as here, the Defendant was charged with the distribution of a controlled substance and not an attempt crime. If this case had proceeded to trial, the Government would not, as a foundational matter, have been able to meet its burden on the requisite elements of the charged offense in Count Six.

Thus, for the reasons stated on the record at the Defendant's sentencing and as further explained herein, the undersigned sustained Defendant Edwards' objection and found that the applicable base offense level should be determined with the exclusion of the 1.38 grams of a non-controlled substance. Accordingly, Mr. Edwards' base offense level should have been calculated

based solely on the 4.306 grams of cocaine base.  Thus, the undersigned found that pursuant to U.S.S.G. §§ 2D1.1(a)(5) & (c)(9),  Mr. Edwards' base offense level was 22; this offense level was decreased by three levels due to Mr. Edwards' timely acceptance of responsibility to result in a total offense level of 19.[5]

### B.  Crack to powder cocaine disparity

In 2005, the Supreme Court held that the United States Sentencing Guidelines were effectively advisory–not mandatory–in a district court's consideration in imposing a sentence. *United States v. Booker*, 543 U.S. 220, 245 (2005).  According to *Gall v. United States*, however, a district court is still required to calculate and consider the applicable sentence guidelines range. *See Gall v. United States*, 552 U.S. 38, 50 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.") (citing *Rita v. United States*, 551 U.S. 338 (2007)).   Moreover, a sentencing court may not presume that the advisory sentencing guidelines range is reasonable. *Id.* at 51. It is the Supreme Court's subsequent decisions in *Kimbrough v. United States*, 552 U.S. 85 (2007) and *Spears v. United States*,  ---- U.S. ----, 129 S. Ct. 840 (2009), which set the stage for the current discussion with respect to the cocaine base to powder cocaine sentencing disparity.

In *Kimbrough v. United States*, the Supreme Court reversed a Fourth Circuit Court of Appeals decision which held that "a sentence . . . 'outside the guidelines range is per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine

---

[5]  It is undisputed that the exclusion of the 1.38 grams of the non-controlled substance did not impact Mr. Edwards' ultimate advisory sentence guideline total offense level.  *See* Defendant's Sentencing Memorandum at 2 ("Because this is the same base offense level reached through the marijuana conversion . . . defendant concedes that even if he wins this objection - he ends up with the same base offense level under the crack based portion of §2D1.1(c)'s drug quantity table.").

offenses.'" *Kimbrough*, 552 U.S. at 91 (citation omitted).  The *Kimbrough* Court observed that the 100:1 ratio "yields sentences for crack offenses three to six times longer than those for powder offenses involving equal amounts of drugs." *Id*. at 94 (citing United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy iv (May 2002), available at http://www.ussc.gov/r_congress/02crack/2002crackrpt.htm ("2002 Report")).  Further, in consideration of the creation of the crack to powder cocaine disparity, the Supreme Court observed that the Anti-Drug Abuse Act of 1986 used the weight of the drug "as the sole proxy to identify 'major' and 'serious' dealers[]" (*id*. at 95); that the Sentencing Commission did not use its usual empirical approach in developing the Guidelines sentences, but rather employed the "weight-driven scheme" of the 1986 Anti-Drug Abuse Act (*id*. at 96) and that the Commission, after studying the crack to powder cocaine disparity, found that the assumptions underlying the disparity are unsupported by data.  *See id.* at 98-100.[6]  Despite the Commission's attempts to impress upon Congress that the exorbitant disparity was not supported by any findings that crack cocaine was more harmful than powder cocaine, the disparity has remained.[7]   Ultimately, the Supreme Court advised that a "judge may determine . . . that, in a particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing."   *Id*. at 91 (citing 18 U.S.C. § 3553(a)); *see also id.* at 110 ("[I]t would not be an abuse of discretion for a district court to conclude

---

[6]   *See Kimbrough*, 552 U.S. at 91-100 for a  discussion with respect to the history of the creation of the 100:1 crack to powder cocaine disparity; the problems the Commission has identified with the disparity, and the Commission's attempts before Congress to achieve a reduction in the ratio.

[7]   In 2007, the Commission effected a "partial remedy" for the problems it identified with respect to the crack to powder cocaine disparity in an amendment to the Sentencing Guidelines which reduced the base offense level associated with each quantity of crack by two levels.  *See* Amendments to the Sentencing Guidelines for United States Courts, 72 Fed. Reg. 28571-28572 (2007).

when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purpose, even in a mine-run case.").

In 2009, the Supreme Court, in *Spears v. United States*, reiterated the decision in *Kimbrough* and again recognized the authority of district courts to "vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. United States*, --- U.S. ---, 129 S. Ct. 840, 843 (2009) (emphasis supplied). The Supreme Court quoted with approval the dissent in the Eighth Circuit's *en banc* decision in *United States v. Spears,* 533 F.3d 715, 719 (8th Cir. 2008), that

> even when a particular defendant in a crack cocaine case presents no special mitigating circumstances–no outstanding service to country or community, no unusually disadvantaged childhood, no overstated criminal history score, no post-offense rehabilitation–a sentencing court may nonetheless vary downward from the advisory guideline range . . . based solely on its view that the 100-to-1 ratio embodied in the sentencing guidelines for the treatment of crack cocaine versus powder cocaine creates an 'unwarranted disparity within the meaning of § 3553(a),' and is 'at odds with § 3553(a).'

*Spears,* 129 S. Ct at 842 (citation omitted). To further clarify its holding in *Kimbrough*, the Supreme Court instructed that "[a] sentencing judge who is given the power to reject the disparity created by the crack-to-powder ratio must also possess the power to apply a different ratio which, in [her] judgement, corrects the disparity." *Id*. at 843. The *Spears* Court upheld the district court's rejection of the crack guidelines and the imposition of a sentenced based on a 20:1 ratio between crack and powder cocaine. *Id*. at 844.

Inasmuch as the current federal cocaine sentencing policy provides for substantially heightened penalties for crack cocaine offenses which are unjustified, this court rejected such policy.

As noted by the United States Sentencing Commission's reports to Congress in 2002 and 2007, the necessity to differentiate between the two principal forms of cocaine–cocaine hydrochloride or powder cocaine and cocaine base, commonly termed "crack"—has not been borne out by the years of scientific data collected.  The Commission has found that:

> (1) the current quantity-based penalties overstate the relative harmfulness of crack cocaine compared to powder cocaine.
> (2) the current quantity-based penalties sweep too broadly and apply most often to lower level offenders.
> (3) the current quantity-based penalties overstate the seriousness of most crack cocaine offenses and fail to provide adequate proportionality.
> (4) the current severity of crack cocaine penalties mostly impact minorities.

United States Sentencing Commission, Report to Congress - Federal Cocaine Sentencing Policy (May 2007), available at http://www.ussc.gov/reports/cocaine2007.pdf ("2007 Report") at 7-8; *see also Kimbrough*, 552 U.S. at 97-100 (discussing the problems identified by the Commission with the crack to powder cocaine disparity and its recommendations to Congress).  Although Congress has rejected the Commission's recommendations in the past to reduce the crack to powder cocaine ratio, the undersigned found the Commission's findings persuasive.  The undersigned also found that these findings create sound policy reasons to reject utilizing the current ratio embedded in the Sentencing Guidelines.

The undersigned adopted the well-reasoned opinions in *United States v. Perry*, 389 F.Supp. 2d 278, 301-08 (D.R.I. 2005) and *United States v. Smith*, 359 F.Supp. 2d 771, 777-782 (E.D. Wis. 2005), and concluded that the current crack to powder cocaine ratio would result in a sentence greater than necessary and would create unwarranted disparity between defendants convicted of criminal offenses involving cocaine base and powder cocaine.  Given this Court's authority to reject

the 100:1 ratio as recognized in *Kimbrough* and to employ a replacement ratio, the undersigned followed the lead in *Spears* and determined that a 20:1 ratio would be appropriate in crack cases before this Court.   At this time, the undersigned declined to utilize a 1:1 ratio, as requested by Mr. Edwards, in part due to the Supreme Court's finding in *Spears* that utilization of the 20:1 ratio was not suspect[8] and the Sentencing Commission recommendation of the same in its 2002 *Report to Congress*. [9]  2002 Report at 102.

### C.  Application of the 20:1 ratio

Applying the 20:1 ratio in this case, Mr. Edwards' alternative base offense level is 16.  This level is determined by equating 4.306 grams of cocaine base to 4.306 grams of cocaine and multiplying that figure by 20, which equals 86.2 grams of cocaine.  The Sentencing Guidelines provide for a base offense level of 16, if the offense involves at least 50 grams but less than 100 grams of cocaine.  Accordingly, Mr. Edwards' base offense level is 16.  Considering the deduction of 3-levels for Mr. Edwards' acceptance of responsibility, pursuant to Section 3E1.1(a) and (b) of the sentencing guidelines, Mr. Edwards' total offense level is 13.

---

[8]  *See Spears*, 129 S.Ct. at 844   ("[T]he District Court's choice of replacement ratio was based upon two well-reasoned decisions by other courts [*United States v. Perry* and *United States v. Smith*], which themselves reflected the Sentencing Commission's expert judgment that a 20:1 ratio would be appropriate in a mine-run case.") (citation omitted).

[9]  Moreover, the undersigned is aware that several courts are now employing a 1:1 ratio given the authority in *Spears* and the Sentencing Commission's continued insistence to Congress that the disparity should not exist between the two forms of the same drug.  *See United States v. Gully*, 619 F.Supp. 2d 633, 640-45 (N.D. Iowa 2009); *United States v. Lewis*, 623 F.Supp. 2d 42 (D.D.C. 2009). Although, the undersigned largely agreed with the policy objections identified in the well-reasoned opinion in *Gully*, however, the undersigned was not prepared to make that final step, at this time.

Given a Total Offense Level of 13 and a Criminal History Category of III, the alternative sentencing guideline range is as follows:  (1) a term of imprisonment of 18-24 months;[10] (2) a period of supervised release of at least 3 years; (3) a fine of $3,000 - $1,000,000; (4) restitution; and (5) a special assessment of $100.  Neither party made any objections to the Court's calculation.

### D.  Consideration of 18 U.S.C. § 3553(a) factors

Section 3553(a) of Title 18 of the United States Code provides several factors that the district court must consider when determining the appropriate sentence for Mr. Edwards.  Specifically, the court must consider the nature and the circumstances of the offense, as well as, the character and history of the defendant.  The court must impose a sentence that: reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant and provides the defendant with needed educational or vocational training, medical care, or other correctional treatment.  The court is also instructed by section 3553(a) to consider the kinds of sentences available and the advisory Sentence Guidelines range; any pertinent policy statement issued by the Sentencing Commission that is in effect on the date of defendant's sentencing and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to victims, if any, of the offense.  18 U.S.C. 3553(a).

In consideration of the afore-mentioned factors, the undersigned found that the instant offense for which Mr. Edwards pled guilty concerned the June 19, 2008 distribution of 0.58 gram

---

[10] *Compare* with the previously discussed advisory guideline range which applied the current crack to powder cocaine ratio of a term of imprisonment of 37-46 months.

of cocaine base to a cooperating source for $220.  However, Mr. Edwards' relevant conduct revealed that he engaged in the repetitive distribution of quantities, albeit small quantities, of cocaine base. In total, Mr. Edwards, distributed 4.306 grams of cocaine during a two-month period.  Mr. Edwards' conduct appears to have been the run of the mill controlled purchases that did not involve the use or threat of violence.  Further, there was no evidence that any of the distributions involved the presence of a gun.  Such conduct may commonly be considered the kind typically associated with street level drug dealers as opposed to major drug trafficking.

The Court observed that the instant offense is Mr. Edwards' first drug conviction – in either federal or state court.  However, his criminal history includes five other criminal convictions as an adult.  Specifically, Mr. Edwards was convicted of possession of stolen property over $100 in 1992; receiving and concealing stolen property in excess of $100 in 1993; uttering and publishing in 1995; driving while license suspended and open intoxicants in 2003, and receiving and concealing stolen property.  Additionally, Mr. Edwards has served a term of probation on three separate occasions; in each instance, his probation terms were never revoked.[11]

Mr. Edwards is a 35 year-old native of Detroit, Michigan.  He reported that his mother raised him and his brother on her own; that he had little interaction with his father and no positive male role models in his life; and at the age of 10, he witnessed his mother's boyfriend slap and beat his mother.  Mr. Edwards failed to complete the ninth grade, but obtained his GED in 1993.  Mr. Edwards relocated to the Bluefield area in March, 2007.  He has never been married.  However, he

---

[11]  The undersigned observed that Mr. Edwards has two pending charges for which an arrest warrant has been issued.  In the first instance, a warrant was issued approximately 13 years ago for conduct which was non-violent in nature. The second pending charge involves the outstanding 2008 warrant issued from a Family Court Division, in Detroit, Michigan for non-support and the failure to appear.

reports that he has five children, three of whom reside with his current girlfriend.[12]  Mr. Edwards reported that before his arrest he planned to seek the custody of an additional son who currently lives in Detroit.       Mr. Edwards also reported that he is in good physical health and that he is not  under the care of any physician or taking any medications.   However, Mr. Edwards has a long history of substance abuse.  He admitted that he has addictions to alcohol and marijuana; that he began abusing alcohol when he was 21, and that he began smoking marijuana at the age of 17 and continued to do so until his arrest.   The undersigned found that the Defendant would benefit from drug treatment through either programs offered by the Bureau of Prisons during a term of imprisonment or as deemed necessary by the United States Probation Office as a special condition of a term of supervised release.   Indeed, as reflected in Paragraph 77 of the Presentence Investigation Report, the Defendant believes he could benefit from substance abuse treatment, and requests to participate in any Bureau of Prisons treatment programs, if  he is eligible.

With respect to Mr. Edwards' vocational skills, he has no earning history for the years of 1996, 1998, 1999, 2000, 2003 - 2007.  Mr. Edwards was last employed in June, 2008, for one week at a telemarketing company.  His only other reported employment history is working for a moving company in Detroit intermittently for approximately 10 years.  Mr. Edwards' credit report revealed that he has no assets and he owes $2,957 in medical and utility collection accounts.   Based on these facts, the undersigned found that the Defendant would benefit from educational and vocational

---

[12]   Although Mr. Edwards reports he is the father to five children, the assigned probation officer reports that he has been excluded as the father to one of these children and paternity determinations are pending for two of the remaining children.   Additionally, the court noted that Mr. Edwards is responsible for child support for his eldest daughter; that he is ordered to pay child support in the amount of  $217.50 per month.  As of August 1, 2009, he owed arrearages which totaled $36,763.38.

training during any term of imprisonment or as deemed necessary by the United States Probation Office as a special condition of a term of supervised release.

Further, the undersigned found that Defendant Edwards did not have the resources to pay a fine and is unlikely to become able to pay any fine in the future.  As previously discussed, Mr. Edwards' credit report revealed that he has no assets and he owes $2,957 in medical and utility collection accounts.  As of August 1, 2009, he owed arrears totaling $36,763.38. Accordingly, the Court imposed no restitution.

In balancing the foregoing information, the undersigned found that the advisory guideline sentence of a term of imprisonment of 37-46 months was greater than necessary.  Thus, the Court departed downward to use the replacement crack to powder cocaine ratio and the alternative advisory guideline range of a term of imprisonment of 18-24 months.

## III.  CONCLUSION

In light of the foregoing discussion, the undersigned adopts a 20:1 cocaine base to powder cocaine ratio in this matter, as well as in future cases involving cocaine base offenses. Upon consideration of the sentencing factors enumerated in 18 U.S.C. § 3553(a) and the entire record herein, the undersigned sentenced Mr. Edwards to a term of imprisonment of 24 months, with credit for time served, followed by a term of supervised release of 3 years.   The undersigned found this sentence sufficient to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  For the reasons stated herein and on the record during the sentencing hearing, the undersigned also found that this sentence is sufficient but not greater than necessary to protect the public, promote respect for the law, deter the Defendant from future criminal conduct and to provide just punishment.

15

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the United States Marshal.

ENTER:        March 12, 2010

IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

16